# EXHIBIT 21

```
 NO:  X03-HHD-CV16-6067796S        :   SUPERIOR COURT

GERALYNN BOONE, ET AL             :   JUDICIAL DISTRICT
                                      OF HARTFORD

v.                                :   AT HARTFORD, CONNECTICUT

BOEHRINGER INGELHEIM              :   MARCH 22, 2018
PHARMACEUTICALS, INC., ET AL
```

BEFORE THE HONORABLE INGRID L. MOLL, JUDGE,
AND A JURY

A P P E A R A N C E S:

  Representing the Plaintiffs:

    ATTORNEY NEAL L. MOSKOW
    Ury & Moskow, LLC
    883 Black Rock Turnpike
    Fairfield, Connecticut  06825

    ATTORNEY RICK NEMEROFF
    ATTORNEY ELLEN A. PRESBY
    ATTORNEY KELLY KOEHLER
    The Nemeroff Law Firm
    Hillcrest Tower
    12720 Hillcrest Road, Suite 700
    Dallas, Texas  75230

    ATTORNEY C. ANDREW CHILDERS
    Childers, Schlueter & Smith, LLC
    1932 North Druid Hills Road/Suite 100
    Atlanta, Georgia  30319

  Representing the Defendants:

    ATTORNEY PAUL SCHMIDT
    ATTORNEY PHYLLIS A. JONES
    ATTORNEY MICHAEL X. IMBROSCIO
    ATTORNEY GREGORY HALPERIN
    ATTORNEY NICHOLAS HAILEY
    Covington & Burling LLP
    One City Center
    850 Tenth Street, NW
    Washington, DC  20001

    ATTORNEY PATRICK FAHEY
    Shipman & Goodwin
    One Constitution Plaza
    Hartford, Connecticut  06103


                          Recorded and Transcribed By:
                          Amanda Kizis
                          Court Recording Monitor
                          101 Lafayette Street
                          Hartford, CT  06106

1         Reilly took it over.  You saw what he did.  What you
2         haven't seen is the first part.  It's important.  The
3         world is crying for this information, but the tricky
4         part is that we have to tailor the message smart.
5         Again, the Boehringer tag line to everything is
6         messaging, marketing, competitive disadvantage, how
7         we're going to be perceived, this is going to be
8         trouble.  That's a Boehringer hallmark in this case,
9         and we've seen repeatedly.
10              And not just me, but Dr. Lehr -- excuse me, Dr.
11        Reilly testified, so you're familiar with Dr.
12        Thorstein Lehr.  We are working together on trying to
13        generating a manuscript on the pharmacodynamics of
14        dabigatran.  So he was -- he was going to provide the
15        first draft of that paper.  I'm not making this up.
16        There is something out there we've not seen.
17              What we do know is when they ultimately got to
18        the end of paper, again, Dr. Lehr is equally to this
19        work.  At some point this will -- this will become
20        clear.
21              Now, there is the question changing topics about
22        we have not shown that there was a test.  I implore
23        you to read Exhibit No. 23.  It is evidence.  I'm not
24        going to put it up because it's got a lot of
25        technical information, but in Exhibit 23, should you
26        read it, you will see the test.  The test is laid out
27        exactly with how to measure, how to do the test, and

1  what to do.  We didn't make this up.

2  Dr. Fierstein.  I didn't realize that by being
3  brief with a doctor that somehow that was a
4  shortcoming because, lord knows, we went long with
5  everybody.  I was quick with Dr. Fierstein because I
6  thought this was enough having seen the EMA label of
7  the CCDS and all the European stuff that when I asked
8  him, doctor, in light of the materials that you saw
9  would you have switched Mary from warfarin to Pradaxa
10 back in 2010?  You're right, these are facts and
11 details.  Based on all the materials that I have
12 reviewed, including the material from the European
13 union, EMA, and so forth, I probably would not have
14 switched her.  He told you what he looked at because
15 we didn't put it on a screen for the umpteenth time
16 when we're trying to finish a doctor in a day, that
17 somehow is a criticism, I'll take that criticism.

18 Again, Dr. Fierstein, based on all the
19 information that you've seen from both sides, from
20 the depositions, as well as materials we sent you,
21 would you have kept Ms. Boone on Pradaxa up until
22 2014?  No, I would not.

23 Judge the credibility of the witness.  I don't
24 necessarily believe that he was plaintiffs' advocate
25 or a plaintiffs' counsel's advocate.  So somehow he
26 was an advocate.  He was here for Mary Boone.  We
27 brought a treating doctor in.  Interesting, we called

1    without objection, to that document and the test that
2    talks about taking people at the top one-third of
3    concentration, reducing them to the -- a lower dose,
4    testing them, and following them.
5         So to -- for counsel to stand up and say that
6    there was no evidence of any specific test was a
7    false statement that we had a duty to correct before
8    this jury.
9         THE COURT:  Attorney Jones, you don't even need
10   to reply.
11        The idea that directing the jury to look at
12   Exhibit 23 as a proxy for what the Court would not
13   permit you to say, vis-à-vis the failure to secure
14   FDA approval -- approval with regard to the 110
15   milligram dose, I am stunned by what was said.  I'm
16   not going to strike Exhibit 23, because it is a full
17   exhibit, but the direction to the jury that it could
18   be used to support the failure to test claim, that
19   will not be permitted and the defendant's request for
20   a curative instruction that the jury not be permitted
21   to consider Exhibit 23 in connection with a failure
22   to test, that request is granted.
23        ATTY. MOSKOW:  Your Honor, may I be heard for
24   the record?
25        THE COURT:  Yes.
26        ATTY. MOSKOW:  Thank you, Your Honor.  To be
27   clear, Exhibit 23 is a full exhibit and on the second

1   me.  No one's ever commented that I talk softly so
2   I'm going to try to speak nice and loudly.  If you
3   have trouble hearing me at any time, just raise your
4   and I'll know that that's a signal that I'm talking
5   too quietly.  Okay?
6        All right.  So in terms of the closing arguments
7   it was suggested that you look at Exhibit 23 during
8   your deliberations.  I am instructing you that you
9   may not hold BI liable for a failure to conduct the
10  testing outlined in Exhibit 23.
11       All right.  Now, I'm going to turn to the
12  written charge that you've been given a copy of.
13       All right.  So, ladies and gentlemen of the
14  jury, you have listened to the evidence and to the
15  arguments of counsel, and it is now time to listen to
16  me as I charge you on the law that applies to this
17  dispute.  You will observe that I am reading from
18  prepared notes.  For reasons of clarity, consistency,
19  and completeness, it is necessary that I instruct you
20  in this manner.  I have given each of you a copy of
21  my jury charge, as well as a copy of the verdict
22  form.  You may follow along as I read the jury charge
23  to you, or you may simply listen; it is up to you.
24  You will notice that certain section headings have
25  numbers next to them; you can simply ignore those
26  numbers, which are for the Court's use.
27       Role of Judge/Role of jury.  You, as the jury,

| | | |
|---|---|---|
| NO:  X03-HHD-CV16-6067796S | : | SUPERIOR COURT |
| GERALYNN BOONE, ET AL | : | JUDICIAL DISTRICT OF HARTFORD |
| v. | : | AT HARTFORD, CONNECTICUT |
| BOEHRINGER INGELHEIM PHARMACEUTICALS, INC., ET AL | : | MARCH 22, 2018 |

C E R T I F I C A T I O N

    I hereby certify the electronic version is a true and correct transcription of the audio recording of the above-referenced case, heard in Superior Court, Judicial District of Hartford, Connecticut, before the Honorable Ingrid L. Moll, Judge, and a jury, on the 22nd day of March, 2018.

    Dated this 23rd day of March, 2018, in Hartford, Connecticut.

    ___Amanda Kizis_____
    Amanda Kizis
    Court Recording Monitor