# EXHIBIT 2

```
HHD CV16-6067874-S              :  SUPERIOR COURT FOR THE

MARY LOU GALLAM                 :  HARTFORD JD

v.                              :  AT HARTFORD

BOEHRINGER INGELHEIM            :  MAY 4, 2018
PHARMACEUTICALS, INC., et al
```

         B E F O R E

              THE HONORABLE LISA MORGAN, JUDGE,
                        AND A JURY

         A P P E A R A N C E S

         FOR THE PLAINTIFF:
                URY & MOSKOW, LLC
                833 BLACK ROCK TURNPIKE
                FAIRFIELD, CT
                     BY: NEAL MOSKOW, ESQ
                FERRER POIROT, PC
                2100 RIVEREDGE PKY #1025
                ATLANTA, GA
                     BY: RUSSELL ABNEY, PHV
                CHILDERS SCHLUTER
                1932 NORTH DRUID HILLS #100
                ATLANTA, GA
                     BY: ANDREW CHILDERS, PHV

         FOR THE DEFENDANT:
                COVINGTON & BURLING, LLP
                ONE CITY CENTER
                850 TENTH STREET NW
                WASHINGTON, DC
                     BY: PHYLLIS JONES, PHV
                         MICHAEL IMBROSCIO, PHV
                BUTLER SNOW
                1020 HIGHLAND COLONY PKY
                RIDGELAND, MS
                     BY: ORLANDO RICHMOND, PHV

                SHIPMAN & GOODWIN
                ONE CONSTITUTION PLAZA
                HARTFORD, CT
                     BY: PATRICK FAHEY, ESQ


                                  JOHN McILHONEY
                                  COURT MONITOR

1    U.S. to use the Cockroft-Gault formula.  That is

2    why none of the doctors came in here and told you

3    they use it in their practice.  If they did, like

4    they do in the rest of the world, that's how Dr.

5    Zei, Dr. Schuch, and everyone else would utilize

6    this medication in assessing kidney function.

7         I'm going to leave that on the screen, but I

8    want to point out something that I think is a

9    little different from what Mr. Richmond represented

10   to you as far as our burden.  I'm going to read

11   directly from the charge as far as causation.

12        Negligent conduct can be a proximate cause of

13   an injury if it is not the only cause or even the

14   most significant cause of the injury, provided it

15   contributes materially to the production of the

16   injury and thus is a substantial factor in bringing

17   it about.

18        You heard from the doctors who treated Mary

19   Lou Gallam.  Pradaxa caused or contributed to that

20   bleed.  Even Dr. Kaplan had to admit Pradaxa caused

21   or contributed to the bleed.

22        You heard from Dr. Reilly -- they actually

23   played that clip for you Dr. Reilly saying we

24   looked at this modeling.  We looked.  And the

25   titration model just didn't work.  That's what he

26   said in court.

27        What are they saying in their clinical trial

1      with children?  That's the best way to dose this
2      medicine.  The only reason they're not pursuing it
3      in adults with atrial fibrillation is market share.
4      They don't have to worry about that market share
5      issue with kids.  They do with the adult AFib
6      population because their competitors don't require
7      monitoring.  And there is a difference.
8           I'll tell you the difference between Xarelto
9      and Pradaxa.  There's not a mountain of evidence
10     that Xarelto has a therapeutic range.  The company
11     that makes that product hasn't brought forth
12     science, papers, e-mail after e-mail that says, We
13     found a therapeutic range.
14          Pradaxa and Boehringer Ingelheim are the only
15     company where that information exists.  And you saw
16     from everything we gave to you, it all came from
17     Boehringer Ingelheim files.  We didn't hire someone
18     to go and find a therapeutic range.  They did it.
19     And they had it.  And that's why they're liable.
20     All we're asking is, Tell doctors in this country
21     what you tell doctors in the rest of the world when
22     they're prescribing this drug.
23          The last thing I want to touch on is I believe
24     Mr. Richmond asserting they told FDA everything.
25     We'd share everything with the FDA, and they
26     haven't made us change the label on this drug.
27          I'm not going to tell you the answer to that

1    question.  I'm going let Michelle Kliewer answer

2    for you, whether or not they had shared with FDA

3    all the information they had.

4         Brad, can you put that on.

5         Would you agree that one of the benefits --

6    Michelle Kliewer, please.

7         You're saying you never told FDA hematology or

8    cardio/renal that patients on Pradaxa should not

9    exceed 200 ng/ml.  Is that what you're saying?

10        Correct.  That's never been discussed with the

11   FDA.

12        Specifically did you ever recommend --

13   recommend to the FDA that the measurement of

14   dibigatran related anticoagulation may be helpful

15   to avoid excessive high exposure to dibigatran in

16   those words?

17        No.

18        Okay.  In general was that statement or that

19   assessment or that opinion ever communicated to the

20   FDA:  that your company was of the position or the

21   belief that the 90th percentile is the value used

22   in support for any guidance to avoid unnecessary

23   risks of major bleeding events in patients using

24   Pradaxa?

25        No.

26        Is it fair to say that you did not indicate

27   this information to the FDA, that your company was

1     of the position or of the opinion that the value of

2     215 ng/ml represents a conservatively assessed

3     cutoff value?

4          That has not been communicated to the FDA.

5          So did you ever communicate to the FDA that

6     your medical colleague, Dr. Feuring, was of the

7     opinion that values exceeding 215 ng/ml would be in

8     the overdosing range?

9          No.  That was not communicated.

10          Okay. Have you ever communicated this

11     collection of knowledge and statements and opinions

12     of your medical colleagues to the FDA?

13          No.

14          And so therefore to your knowledge this has

15     not been communicated to the FDA.  Is that correct?

16          Correct.

17          Okay.  So, therefore, you never communicated

18     that to the FDA, did you?

19          Correct.

20          And, therefore, it's fair to say that that

21     opinion and this data and this conclusion was never

22     communicated to the FDA?

23          Correct.

24          No, I did not communicate this to the FDA.

25          Okay.  But, nonetheless, you haven't given

26     this to the FDA, have you?

27          No, I have not.

1          Okay.  So the answer to that, but nonetheless,

2     as good as it was, it wasn't provided to the FDA.

3     Right?

4          Correct.

5          What I say and what Mr. Richmond say is not

6     evidence.  The Judge will tell you that.  What Ms.

7     Kliewer said is evidence.  They didn't share this

8     information with the FDA.  Thank you.

9          THE COURT:  Thank you.  Attorney Childres.

10          At this time, ladies and gentlemen, I will

11     present the charge to the jury.  As I've tried to

12     do throughout, I try to give you some idea as to

13     how long these segments will take.  I will tell you

14     that I think the -- my charge will take about 45

15     minutes.

16          So, ladies and gentlemen of the jury, you have

17     listened to the evidence and to the arguments of

18     counsel.  And it is now my duty to instruct you on

19     the law, which you must apply to the facts as you

20     find them.  I am required to read these

21     instructions into the record.  However, you will be

22     provided with a copy of the written charge for your

23     deliberations.

24          You, as the jury, and I, as the judge, have

25     two separate functions.  It is your function to

26     find what the facts are in this case.  With respect

27     to the facts, you and you alone are charged with

HHD CV16-6067874-S


MARY LOU GALLAM


v.


BOEHRINGER INGELHEIM PHARMACEUTICALS, INC., et al

### C E R T I F I C A T I O N


    I hereby certify that the foregoing is a true and
accurate transcript of the recording of the above-entitled
hearing before the Honorable Lisa Morgan, Judge of the
Superior Court for the Hartford Judicial District, and a
jury, at Hartford, on the 4th day of May, 2018.


    Dated this 7th day of May, 2018, in Hartford,
Connecticut.


                        _____

                        John McIlhoney, Court Monitor