# EXHIBIT 38

```
HHD CV16-6067874-S                    :    SUPERIOR COURT FOR THE

MARY LOU GALLAM                       :    HARTFORD JD

v.                                    :    AT HARTFORD

BOEHRINGER INGELHEIM                  :    MAY 4, 2018
PHARMACEUTICALS, INC., et al
```

B E F O R E

    THE HONORABLE LISA MORGAN, JUDGE,
            AND A JURY

A P P E A R A N C E S

<u>FOR THE PLAINTIFF</u>:
    URY & MOSKOW, LLC
    833 BLACK ROCK TURNPIKE
    FAIRFIELD, CT
        BY: NEAL MOSKOW, ESQ
    FERRER POIROT, PC
    2100 RIVEREDGE PKY #1025
    ATLANTA, GA
        BY: RUSSELL ABNEY, PHV
    CHILDERS SCHLUTER
    1932 NORTH DRUID HILLS #100
    ATLANTA, GA
        BY: ANDREW CHILDERS, PHV

<u>FOR THE DEFENDANT</u>:
    COVINGTON & BURLING, LLP
    ONE CITY CENTER
    850 TENTH STREET NW
    WASHINGTON, DC
        BY: PHYLLIS JONES, PHV
           MICHAEL IMBROSCIO, PHV
    BUTLER SNOW
    1020 HIGHLAND COLONY PKY
    RIDGELAND, MS
        BY: ORLANDO RICHMOND, PHV

    SHIPMAN & GOODWIN
    ONE CONSTITUTION PLAZA
    HARTFORD, CT
        BY: PATRICK FAHEY, ESQ

                                                JOHN McILHONEY
                                                COURT MONITOR

```
 1      have no question in this courtroom today that there
 2      are lab tests that can be run at LabCorp and Quest
 3      to tell you what the patient's Pradaxa level is.
 4           And he made a pretty significant point.  For
 5      him, as an ER physician, the benefit of warfarin
 6      over Pradaxa:  He can check.  He can tell if the
 7      patient that he's treating for bleed, they
 8      overanticoagulated?  Are they not?  And that can
 9      help him with his treatment.
10           So getting back to the verdict form.  Have we
11      proven by a preponderance of the evidence the
12      defendant's conduct was the cause in fact of the
13      plaintiff's injuries?  Yes.  You should check yes
14      on that.  And when you check yes, you then move on
15      to the second page:  Have we proven by a
16      preponderance of the evidence the defendant's
17      conduct was a proximate cause?  Did that cause the
18      bleed?  Yes.
19           Don't take my word for it.  Listen to all of
20      her doctors.  Listen to Dr. Kaplan even saying,
21      Yes, Pradaxa, that contributed to the magnitude of
22      the bleed.
23           So when you get past the first two sections,
24      you then get to damages.  This is the hardest part
25      of the case, I believe, is for you to decide what
26      the adequate compensation is for Mary Lou Gallam?
27      The first part -- it's broken into two parts,
```

```
 1        economic damages and noneconomic damages.  Economic
 2        damages are easy.  What were her hospital bills?
 3        Judge Morgan will actually tell you there's no
 4        dispute, they were $17,971.05.  That's easy.  She's
 5        not claiming lost wages.  We didn't ask for that.
 6        We just want her medical bills to be paid for, the
 7        economic damages.
 8             The second part's a little harder, noneconomic
 9        damages, physical pain and suffering as well as
10        mental pain and suffering.  If you find that BI is
11        liable, they're liable for that.  The law will tell
12        you pain and suffering, they are responsible for
13        any and all pain and suffering that Mary Lou Gallam
14        experienced.
15             And Judge Morgan's also going to tell you that
16        we may suggest to you a formula.  I told you at the
17        beginning of this case we're not going to ask for
18        millions of dollars.  And I'm going to keep my
19        word.  We're not.  We're not asking for that.
20        We're asking for you to decide how much is
21        reasonable for Mary Lou Gallam for noneconomic
22        damages?  But I will suggest to you a way that you
23        may calculate that.
24             You saw that Boehringer Ingelheim felt that it
25        was worth it to them to pay Dr. Zei $800 an hour
26        and Dr. Kaplan $750 an hour to come in here to
27        court to try to keep them from having to take
```

```
 1          responsibility for what happened to Mary Lou
 2          Gallam.  So what I suggest to you would be that you
 3          use those hourly rates as a basis for coming up
 4          with Mary Lou Gallam's noneconomic damages.  We
 5          know that's a rate that's acceptable to BI to pay
 6          to their experts.  It should be acceptable for them
 7          to pay to the people that they injured.
 8               I would also suggest to you that while she was
 9          in the hospital, she should be paid for every hour
10          she was there.  That's 48 hours.  Whether you
11          choose $800 an hour, $750 an hour, or something
12          else.
13               But then she got out of the hospital.  She
14          spent 59 days from the time she left until the time
15          she felt back to normal.  I would suggest to you
16          that was like a job for Mary Lou Gallam recovering,
17          getting back to normal.  So for that period of
18          time, that 59 days, I would suggest to you to use
19          one of those hourly rates, either 800 or $750 an
20          hour, pay her for 8 hours a day for doing that job
21          to recover for those 59 days.   So I'm not going
22          put a number in here.  This is up to you.
23               Final question that you're going to be asked
24          is about punitive damages.  Punitive damages are
25          different from compensatory damages.  This is a
26          product liability case.  When we have products like
27          pharmaceutical products, there are specific rules
```

```
 1              THE COURT:  Thank you.  So, counsel, you'll
 2       have six minutes reserved for rebuttal.
 3              At this time we will hear from Attorney
 4       Richmond.
 5              ATTY. RICHMOND:  Thank you, your Honor.  May I
 6       proceed?
 7              THE COURT:  You may.
 8              ATTY. RICHMOND:  Good morning, ladies and
 9       gentlemen.
10              To my team, I'm going to start a little bit
11       differently then we had anticipated.  But I'll get
12       to the slides in just a moment.
13              Ladies and gentlemen of the jury, I want to
14       say to you that I don't know many people who value
15       this system more than me.  And I've been involved
16       in this system in virtually every capacity.  At law
17       school I clerked for a judge, became Marine Corp.
18       judge advocate and was a special assistant United
19       States attorney, a prosecutor.  Then I was a
20       criminal defense attorney.  I've spent time on that
21       side of courtroom representing plaintiffs.  And now
22       my practice is largely a defense practice.
23              I appreciate what her Honor does and what you
24       do and what all of this means.  I even like the
25       ambiance of this old courtroom.  I appreciate this
26       process.
27              And the reason I started with telling you this
```

 1            instead of what's in slides is because there's
 2            something that bothered me greatly.  And that was
 3            the suggestion about damages, something that I
 4            don't even typically discuss.  What you were
 5            essentially told was that because my client has
 6            been sued and forced to defend itself by hiring
 7            experts, as we necessarily have to do when you have
 8            these complex issues, to take that and use that
 9            somehow as a measure of damages.
10                 And, in fact, what you were told is that BI
11            gladly paid that amount.  No, ma'am.  No, sir.  BI
12            doesn't gladly pay that amount.  The system
13            requires that we defend ourselves with respect to a
14            good medicine that provided stroke prevention, that
15            when Ms. Gallam had a bleed by something that was
16            not caused by Pradaxa, there was the effect of it
17            on that potentially of what anticoagulation does,
18            what anticoagulation does even when it is not
19            excessive.
20                 I value this system.  And I value what you've
21            done this week.  And I value what you're going to
22            do in just a few minutes.
23                 Let me talk to you about what this case is
24            about.  I've told you when I talked to you a few
25            weeks ago that we're here because Ms. Gallam had a
26            bleed.  And then I said, Of course all of you would
27            say, Yeah, we get it.  Of course.  And I told you,